Gow Co., Inc., v. Hunter.

(Division A. May 11, 1936. Suggestion of Error Overruled June 8, 1936.)

[168 So. 264. No. 32197.]

Green, Green & Jackson, of Jackson, for appellant.

900

**Vollor & Teller,** of Vicksburg, for appellee.

902

Argued orally by **Garner Green, Sr.**, for appellant, and by **Landman Teller**, for appellee.

**Cook, J.**, delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Warren county in favor of the appellee, Henry Hunter, Jr., for the sum of two thousand five hundred dollars as damages for personal injuries alleged to have been sustained by him as a result of the negligence of his employer, the Gow Company, Inc., appellant herein.

In view of the conclusion we have reached on the issue of liability, it will be unnecessary to state the facts in reference to issues raised for the first time on a motion for a new trial, and upon which several assignments of error are based. The facts, as alleged in the declaration and fully developed in the evidence, are substantially as follows: The appellant was engaged in drilling operations in Warren county for the purpose of locating

and preparing suitable foundations for certain bridges to be erected. The superintendent in charge of this work had under his direction and control a subforeman and several common laborers, including the appellee. In the progress of this work it became necessary to drill on the side of a high embankment, and for that purpose a ledge was cut in the side of this embankment about twenty-five or thirty feet from the level of a road below and the foot of the embankment. It then became necessary to move the drilling machine up this embankment and place it on this ledge, the incline of the embankment being about sixty-five degrees. The drilling machine consisted in part of a gasoline motor and was placed on skids about ten feet long and five feet wide. The machine, which weighed nine hundred thirty-five pounds, was placed on one end of these skids and covered a little more than one-half of them.

In moving this heavy machine up the incline the method adopted was to attach one end of the block and tackle to a stake above the ledge, and the other end to the uncovered or light end of the skids on which the machine was resting. With this block and tackle and the physical efforts of the laborers, the machine was pulled and shoved up the embankment until the front end of the skids was above and over the ledge on which the machine was to be placed, leaving the machine itself on the side of the incline below the ledge. When the machine reached this point the blocks of the block and tackle came together so that it could not operate further without moving the stake to which it was attached higher up the side of the embankment. To accomplish this purpose it was necessary to release the block and tackle from the machine. The superintendent, or general supervisor, in charge of the work, then directed three of the five employees present to mount the front end of the skids for the supposed purpose of acting as a balance. He directed the remaining two laborers, one

of whom was the appellee, to get on the incline behind the machine to assist in holding it, and in obedience to this order these employees took up their stations at the lower end of the machine, the appellee having, under the direction of the superintendent, a crowbar to assist in the work. As a volunteer, the truck driver who had hauled the machine to that place undertook to assist in holding the machine. After the parties were placed on and around the machine as indicated, the superintendent directed the subforeman to release the block and tackle, and when he released it, the machine started to slide down the incline. When it did so, the superintendent shouted a command to the appellee to "drop the crowbar and grab hold of it." He obeyed this order and, with the assistance of his co-laborers at the lower end of the machine and the three who had jumped off the machine and got hold of it, succeeded in stopping it after it had slid down the incline a short distance, probably a foot.

The appellee testified that when he caught hold of the machine as its weight came down on him he received a severe strain in the lower part of his back. He reported the fact of his injury to his superintendent, who gave him permission to return to his home. He went to his home and remained there until night, when he reported his continued suffering to the said superintendent and was by him carried to the Vicksburg Sanitarium, where he remained for more than thirty days under treatment of physicians employed by appellant. As to the fact of his injury the appellee was corroborated by the two physicians who attended him, both of whom were introduced by the appellee. These physicians testified that the appellee was suffering from a sacroiliac strain of apparently unusual severity. These physicians were fully examined and cross-examined as to the injury and the treatments administered.

At the conclusion of the evidence offered by the appellee, both sides rested and requested peremptory instructions, and the court granted the peremptory instruction requested by the appellee, and submitted the cause to the jury for the assessment of damages only.

The appellant contends that there could be no recovery, and the peremptory instruction requested by it should have been granted, for the reasons that (1) there was no failure to furnish a safe place to work; (2) if there was any negligence it was that of a fellow servant; and (3) the accident arose from an assumed risk.

Appellant bases its contention that there could be no recovery on account of failure to furnish a safe place to work on the ground that the work and place to work were of a shifting and changing nature as the work progressed. It is well established that the rule requiring the master to use ordinary care to provide a reasonably safe place for his servant to work is not applicable to a case where the work which the servant is employed to do is of such a nature that its progress is constantly changing conditions as regards an increase or diminution of safety. Gulf, M. & N. R. Co. v. Brown, 143 Miss. 890, 108 So. 503; Cumberland Telegraph Co. v. Cosnahan, 105 Miss. 615, 62 So. 824; International Shipbuilding Co. v. Carter, 121 Miss. 103, 83 So. 413. But we do not think that principle has any application to the facts here involved. It is true that the position of the machine changed as it moved up the incline, but there was no such change in the place of work, caused by the progress of the work, as would relieve of responsibility. The change of conditions which created the hazard was due to the act of releasing the block and tackle by which the machine was held in place.

We do not think there is any merit in the contention that the negligence, if any, in releasing the block and tackle with which the machine, situated as it then was on the incline, was held in place, was the negligence of

a fellow servant. The block and tackle was released under the direct orders of appellant's superintendent who was in full charge, control, and direction of the work. It was the nondelegable duty of appellant to exercise reasonable care not only to furnish a reasonably safe place for its servants to work, but also to exercise such care to provide reasonably safe means and methods of performing the work, including a sufficient number of servants to perform the duties required of them. Jefferson v. Denkmann Lumber Co., 167 Miss. 246, 148 So. 237; Goodyear Yellow Pine Co. v. Mitchell, 168 Miss. 152, 149 So. 792, 150 So. 810. In placing the servants on and around this machine, and directing the release of the block and tackle, the superintendent in charge of the work was acting in the place and stead of the appellant, and his negligence, if any, in so doing was the negligence of the appellant.

If the appellant was negligent in failing to provide a reasonably safe place for its servants to work, or in failing to adopt and use reasonably safe means and methods of performing the work or in failing to furnish a sufficient number of servants to perform the duties required of them, the appellee did not assume the risk. Section 513, Code 1930. The servant does not assume the risk of the negligence of the master in the stated particulars. "The risk that the servant assumes is the danger incident to the service which remains after the master has exercised reasonable care for the safety of the servant." Wilbe Lumber Co. v. Calhoun, 163 Miss. 80, 140 So. 680, 682. When the appellee obeyed the order of the master to catch and hold the machine as it slipped down on him, he did not in any legal sense voluntarily assume the risk, as he was then confronted with an emergency with no time for thought or deliberation. In stating the facts out of which the alleged injury arose, the declaration sufficiently charged negligence not only in failing to furnish a reasonably safe place to work, but in fail-

ing to adopt and use reasonably safe means and methods of doing the work, and in failing to furnish sufficient help to do the work, and upon the evidence the court committed no error in refusing the peremptory instruction requested by the appellant.

The appellant further contends that the court erred in peremptorily instructing the jury to return a verdict for appellee on the issue of liability. The appellant offered no evidence, and the facts are not disputed, but when reasonable minds may draw different inferences as to negligence from conceded facts, the solution of the issue should be submitted to the jury. As said in Mississippi Central R. Co. v. Mason, 51 Miss. 234, "where the facts are conceded, but the inference in regard to negligence is still doubtful, depending upon the general knowledge and experience of men," it is a case for the jury. Southern Railway Co. v. Floyd, 99 Miss. 519, 55 So. 287. Upon the evidence in this record we think the question of whether or not the appellant was negligent in the discharge of its duties to the appellee should have been submitted to the jury. The judgment of the court below will, therefore, be reversed and the cause remanded.

Reversed and remanded.